MATTER OF RIOS-CARRILLO

In DEPORTATION Proceedings

A-13568545

*Decided by Board June 12, 1963*

An application under section 248, Immigration and Nationality Act, for change
of nonimmigrant status and the issues raised in the proceedings thereunder
are not within the jurisdiction of either the special inquiry officer or the Board
of Immigration Appeals.

CHARGE:

Order: Act of 1952—Section 241(a)(9) [8 U.S.C. 1251(a)(9)]—Failed to
comply with conditions of status of agricultural worker under which
admitted to the United States.

A total of 14 cases involving the same issues have been appealed
by counsel. This case will serve as a precedent for the disposition
of the others. To simplify the discussion and for administrative
convenience, this case which the special inquiry officer handled in an
order also disposing of two other cases (Rogelio Avila-Valdez —
A-13568544 and Jose Salud Guiterrez-Serrato — A-13569146) will be
considered separately.

Respondent appeals from an order of the special inquiry officer
finding him deportable upon the ground stated above. Voluntary
departure was granted. We shall reopen proceedings.

Respondent, a 26-year-old single male alien, a native and citizen of
Mexico, was admitted to the United States as an agricultural worker
on May 3, 1962 for a period ending June 14, 1962. Recontracts ex-
tended the period to December 20, 1962 (Ex. 4). For the purposes
of this opinion, as is explained later, we shall assume that by reason
of an agreement between the Republic of Mexico and the United
States (Ex. 7), the period was extended an additional 15 days to Jan-
uary 4, 1963. Respondent was given no further extension by the
Service yet remains in the United States. The Service charges that
the respondent is deportable because his failure to depart violated the
conditions of his admission. Counsel contends that the respondent

291

who had submitted an application for a change of his status, is legally in the United States because his application was improperly denied; counsel also raises a question as to the applicability of the charge in the order to show cause, and contends that the order to show cause was prematurely issued.

The questions raised by counsel require a full statement of facts even though some of the facts are irrelevant in this deportation proceeding. Respondent was admitted to the United States as an agricultural worker under the Agricultural Act of 1949 as amended (7 U.S.C. 1461-1468).[1] On January 4, 1963, the respondent filed an application (Ex. 5) with the District Director at Los Angeles, California under section 248 of the Act (8 U.S.C. 1258)[2] for a change of his status from an agricultural worker to a temporary agricultural worker described in section 101(a)(15)(H)(ii), 8 U.S.C. 1101(a)

---

[1] Pertinent portions of the Agricultural Act of 1949, as amended, follow:

Workers recruited under this title who are not citizens of the United States shall be admitted to the United States subject to the immigration laws (or if already in, for not less than the preceding five years or by virtue of legal entry, and otherwise eligible for admission to, the United States may, pursuant to arrangements between the United States and the Republic of Mexico, be permitted to remain therein) for such time and under such conditions as may be specified by the Attorney General but, notwithstanding any other provision of law or regulation, no penalty bond shall be required which imposes liability upon any person for the failure of any such worker to depart from the United States upon termination of employment: * * * (section 505, 7 U.S.C. 1464, as amended, 7 U.S.C. 1464, 1465 (Supp. III)).

Workers recruited under the provisions of this title shall not be subject to the head tax levied under section 2 of the Immigration Act of 1917 (section 506(c), 7 U.S.C. 1465, as amended, 7 U.S.C. 1464, 1465 (Supp. III)).

Nothing in this Act shall be construed as limiting the authority of the Attorney General, pursuant to the general immigration laws, to permit the importation of aliens of any nationality for agricultural employment as defined in section 507 [Agricultural Act of 1949], or to permit any such alien who entered the United States legally to remain for the purpose of engaging in such agricultural employment under such conditions and for such time as he, the Attorney General, shall specify (section 509, 7 U.S.C. 1468, as amended, 7 U.S.C. 1468 (Supp. III)).

[2] The Attorney General may, under such conditions as he may prescribe, authorize a change from any nonimmigrant classification to any other nonimmigrant classification in the case of any alien lawfully admitted to the United States as a nonimmigrant who is continuing to maintain that status, except an alien classified as a nonimmigrant under paragraph (15(D) of section 101(a) [alien crewmen], or an alien classified as a nonimmigrant under paragraph (15)(C) or (J) of section 101(a) [alien in transit or alien coming as participant in a State Department program] unless he applies to have his classification changed from classification under paragraph (15)(C) or (J) to a classification under paragraph (15)(A) or (15)(G) of section 101(a) [diplomat or representative of a foreign government] (section 248 of the Act).

(15) (H) (ii).[3]   As required by regulation,[4] the application for a change of status was accompanied by a petition made by an agricultural cooperative for the respondent's services as a temporary agricultural worker (Ex. 6).  On January 17, 1963 the District Director returned the petition to the agricultural cooperative with a request that a clearance from the State of California be submitted showing that unemployed persons capable of performing the labor could not be found in the United States (Ex. 6).  Nothing further appears to have been done with this petition.  On January 18, 1963, the District Director denied the application for a change of status on the ground that respondent was not a nonimmigrant and therefore could not change from one nonimmigrant class to another nonimmigrant class. The reason given for finding respondent was not a nonimmigrant was that the nonimmigrant class is created by section 101(a) (15) of the Act, but respondent had not been admitted under this section: he had been admitted under the Agricultural Act of 1949, as amended.  The decision also notified the respondent that he had 15 days within which to appeal to the Regional Commissioner.  On the same day the decision was handed down, the District Director issued an order to show cause formally commencing deportation proceedings against the respondent, and notifying him to appear for his deportation hearing on January 29.  The order to show cause was served by mail.  On January 25, 1963, the respondent filed an appeal with the Regional Commissioner from the District Director's denial of his application for a change of status.  (The deportation hearing was not held on January 29th as scheduled.)  On January 30, 1963, the Regional Commissioner dismissed the appeal on the ground used by the District Director and on the additional ground that respondent had not been the beneficiary of an approved petition (Ex. 5).  On February 4, 1963 the respondent was notified that the hearing in the deportation case had been rescheduled to February 12, 1963.

On the rescheduled date, the deportation hearing was held.  The Service established that the respondent had been admitted as an agricultural worker authorized to remain until December 20, 1962 and that he had not departed after the terminal date.  Respondent testified that on December 20, 1962, the terminal date, he had been employed by the Tamaka Growers, that an official of the camp requested

---

[3] In pertinent part the section relates to an alien "who is coming temporarily to the United States to perform other temporary services or labor, if unemployed persons capable of performing such service or labor cannot be found in this country;"

[4] In pertinent part the regulation requires that an application for a change of nonimmigrant classification "shall be accompanied by an application on Form I-129B made by the alien's prospective employer or trainer."  (8 CFR 248.3)

him to remain for an additional 15 days. (A statement taken from the respondent before the issuance of the order to show cause reveals. that on December 28, 1962, he changed from one agricultural employer to another.) The special inquiry officer ordered respondent deported on the charge in the order to show cause, and the appeal before us was filed.

On appeal, counsel contends that the order to show cause was prematurely issued and is in violation of due process because it was issued before the decision of respondent's appeal to the Regional Commissioner from the District Director's denial of his application for a change of status. (It is also alleged that the Service arrested six respondents ignoring the fact that their appeals to the Regional Commissioner were pending and did not release them until after the order to show cause had been served. The allegation of counsel is not contested by the Service. Whether or not respondent was in this group is not clear; however, for the purpose of this order we shall assume that he was.)

Counsel's contention concerning the issuance of the order to show cause will be dismissed. Enforcement of the immigration laws often makes necessary, investigation and detention of aliens suspected to be in the United States illegally. The question as to whether there was an abuse of these powers and unwarranted haste in the issuance of the order to show cause is, in the absence of matters of duress and due process, for the attention of the Service rather than the Board. No matter of duress is raised. While a matter of due process is advanced, it seems clear that premature issuance of an order to show cause would not alone amount to a denial of due process. A similar matter was involved in *U.S. ex rel. Bilokumsky* v. *Tod*, 263 U.S. 156 (1923). Bilokumsky, an alien who had been ordered deported contended that the deportation proceeding was void ab initio because there had been a lack of probable cause for the issuance of the warrant of arrest. The court rejected the contention saying, "Irregularities on the part of the government official prior to, or in connection with, the arrest, would not necessarily invalidate later proceedings in all respects conformable to law." (263 U.S. at 158) There is no evidence here that the later proceedings failed to conform to law.

We come thus to the issue of respondent's deportability. Deportation is sought under section 241 (a) (9) of the Act (8 U.S.C. 1251 (a) (9)). The section provides for the deportation of an alien who:

was admitted as a nonimmigrant and failed to maintain the nonimmigrant status in which he was admitted or to which it was changed pursuant to section 248, or to comply with the conditions of any such status; * * *

Although the section speaks of an alien admitted as a nonimmigrant, neither the statement of law in the order to show cause nor the factual

294

allegation of the order to show cause claims that respondent was admitted as a nonimmigrant: the statement of law is that respondent was admitted "in a temporary status, to wit, an agricultural worker under Title V of the Agricultural Act of 1949, as amended,"; the factual allegation is that respondent was "admitted in the temporary status of an agricultural worker". The special inquiry officer, assuming without discussion (the issue had not been raised before him) that an agricultural worker was a nonimmigrant as described in section 241(a)(9) of the Act, found the charge sustained on the ground that the respondent had clearly remained in the United States longer than the period for which he had been authorized to remain.

We shall reopen proceedings so that the assumption made by the special inquiry officer may be examined since the record raises the question as to whether a temporary worker admitted under the Agricultural Act is a nonimmigrant and whether one who is not a nonimmigrant is deportable under section 241(a)(9). As counsel (who contends that respondent is a nonimmigrant but not a deportable one) points out, the Service, in the proceeding for the change of status took the position that respondent is *not a nonimmigrant* [5], yet in this proceeding the Service proceeds on the theory that respondent is a nonimmigrant. How can the respondent be a nonimmigrant for one purpose and not for another in matters as vital as those involved? Even more to the point is the fact that section 241(a)(9) of the Act on which the deportation order is based appears by its terms to relate to aliens whose status *can be changed by section 248 of the Act*. The respondent has been found by the Service in the change of status proceeding to be an alien whose status *cannot be changed by section 248 of the Act*. Is section 241(a)(9) of the Act broad enough to include an alien whose status cannot be changed by section 248 of the Act? These issues require an answer [6], for if the respondent is not deportable under the section of law on which this proceeding is based, he cannot be ordered deported in this proceeding merely because he appears to be

---

[5] The order of the District Director denying the application for a change of status reads:

An alien who was admitted to the United States as an agricultural worker under the provisions of the Agricultural Act of 1949, as amended, not having acquired a nonimmigrant classification under section 101(a)(15) of the Immigration and Nationality Act is ineligible for a change of nonimmigrant status under section 248 of the Act (*Matter of C—*, 8 I. & N. Dec. 419).

The Regional Commissioner in affirming the denial stated: "The alien may not be considered as a nonimmigrant and, therefore, is not in a nonimmigrant classification."

[6] The issues have apparently not been the subject of adjudication by this Board; however, see *Matter of G—/—*, 6 I. & N. Dec. 491.

deportable under a section which has not been lodged.[7] Due process requires that deportation be accomplished only on a ground provided by law, that the alien be notified of the ground so that he can make his defense, that a record be created, and that the record reveal that the Service has established in a fair hearing, by reasonable, substantial, and probative evidence, that the alien is within that ground.

An issue which may come up again at the reopened hearing is the contention of counsel that the provisions of a standard work contract (Ex. 7) which provide that the services of an agricultural worker may be utilized for a period of not more than 15 days after the expiration of his contract, constitutes an extension of legal stay for the 15 days if the option is exercised. While this contention appears to be arguable on the basis of what little there is in the record, we see no need for attempting to decide or for developing the issue since deportation is sought not for what occurred within the 15-day period following the termination of the contract, but for the failure to depart from the United States even after the 15-day period. (In respondent's particular case, we note that on December 28, 1962, before the expiration of the 15-day extension, he left the employer who had asked him to continue.) However, development of this matter is left to the discretion of the special inquiry officer.

We have reserved until now comment on the issues raised by counsel concerning respondent's attempt to change his status from an agricultural worker to a nonimmigrant worker. The proceeding to obtain the change of status and the issues raised in the proceeding—the propriety of the denial of the application for the change of status, the necessity for filing a petition from the employer in connection with the application, the propriety of using state permission to employ agricultural workers made in collateral cases—are not within the jurisdiction of either the special inquiry officer or this Board. The initial decision on the application for a change of status is for the District Director (8 CFR 103.1(f), 103.2–3, 214.4, Form I–129B (note instructions on Form); the appeal is to the Regional Commissioner (8 CFR 103.1(e)). Clearly, neither the special inquiry officer nor the Board has jurisdiction over the proceeding (8 CFR 3.1; see *Matter of Malk-iesman*, Int. Dec. No. 1090). Since this is so, it follows that comment on the issues raised as to the change of status proceeding would be inappropriate.

---

[7] Counsel suggests that if the respondent is deportable at all, the proper charge would be under section 241(a)(2) of the Act (8 U.S.C. 1251(a)(2)) which requires the deportation of an alien who is in the United States in violation of the Immigration and Nationality Act or "any other law of the United States".

**ORDER:** It is ordered that the outstanding order of the special inquiry officer be and the same is hereby withdrawn.

*It is further ordered* that proceedings be reopened for purposes not inconsistent with those stated in our order and for such other purposes as the special inquiry officer may deem appropriate.

*It is further ordered* that the decision of the special inquiry officer be certified to this Board.